UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAVISH JOHNSON (# M05491), | ) |
| Plaintiff, | ) |
| | ) No. 10 C 5480 |
| v. | ) |
| | ) Hon. Rebecca R. Pallmeyer |
| RAVIEL B. WINTERS, CHRISTOPHER ROSS, | ) |
| CHRISTOPHER M. GORE, ROBERT X. | ) |
| REIGHTER, and PHILIP J. MICHEL, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that a correctional officer at the Stateville Correctional Center violated Plaintiff's constitutional rights by sexually molesting him, and that fellow officers harassed and retaliated against him by writing numerous false disciplinary reports when he complained about the alleged misconduct. Defendants have moved to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion is denied.

Complaints filed by *pro se* litigants are to be liberally construed; they need not meet the more exacting standards applied to pleadings prepared by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Kaba v. Stepp*, 458 F.3d 678, 681, 687 (7th Cir. 2006). FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court assumes the truth of Plaintiff's factual allegations and construes the facts, and any reasonable inferences, in the light most favorable to him. *Bell Atlantic Corp.*, 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

**FACTS**

Plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. Defendants Raviel Winters, Christopher Ross, Robert Reighter, and Christopher Gore are all correctional officers at Stateville. Defendant Philip Michel is a lieutenant at the facility. (Complaint at 2.)[1]

According to Plaintiff's allegations, presumed true for purposes of this motion, on September 7, 2009, at 7 a.m., Defendant Michel issued a disciplinary report charging Plaintiff with assault. (*Id.* at 11.)[2] Michel's report stated that Plaintiff had grabbed him during a cell search after the officer found a toothpaste tube filled with urine. Later that morning, at 10 a.m., Defendant Winters was supervising inmates showering when he made a "sexual joke" about Plaintiff's behind. The two exchanged words, and Winters issued Plaintiff a second disciplinary report, accusing Plaintiff of violating rules prohibiting intimidation or threats, dangerous communications, and insolence. Winters claimed that Plaintiff had called him a "punk ass bitch" and attempted to spit on him. (*Id.* at 14.)

That evening, after Plaintiff was confined to his cell, Winters allegedly reached through the chuckhole and grabbed Plaintiff's buttocks. Plaintiff demanded to speak to a lieutenant, but Winters urged him to say nothing and promised to "take care of" Plaintiff by giving him extra food while he was in segregation if Plaintiff agreed not to report Winters' misconduct. (*Id.* at 4.) Later that day, Winters delivered a Subway sandwich to Plaintiff as a reward for his silence. (*Id.*) Winters and Plaintiff evidently remained at odds, however, because at 5:12 p.m. that afternoon,

---

[1] The motion to dismiss was filed by only three of the five named Defendants. The U.S. Marshals Service has filed an unexecuted return of service [26] as to Defendant Gore, who has moved to Florida and for whom the Marshal has no current contact information. The fifth Defendant, Reighter, was served after the motion to dismiss was fully briefed.

[2] The Complaint and attached exhibits were docketed as a single document and will be cited here as the Complaint, followed by the page number from the court's electronic docket. Those exhibits are the source of certain dates and additional details.

Winters issued yet another disciplinary report, this time charging Plaintiff with damage or misuse of property, intimidation or threats, dangerous communications, insolence, and possession of contraband. (*Id.* at 15.)

Two hours later, Plaintiff received a fourth disciplinary report, this one from Defendant Ross. (*Id.* at 17.) The Ross report, which apparently accused Plaintiff of damage or misuse of state property, was later expunged, but a fifth disciplinary report, issued later that evening by Defendant Reighter, falsely charged Plaintiff with assault, damage or misuse of property, and insolence. (*Id.* at 18.) Defendant Gore wrote a sixth and final disciplinary report at 10 p.m. that night. (*Id.* at 20.) According to the report, Gore witnessed Plaintiff call a fellow inmate a "snitch bitch ass" and spit on him several times. (*Id.*)

The next day, Plaintiff advised Winters that he intended to file a grievance over the buttocks-grabbing incident. Shortly thereafter, Plaintiff's cell was searched and he was given a false disciplinary report. (*Id.* at 4.) (The court notes that although a number of relevant documents are incorporated in Plaintiff's complaint, no disciplinary report dated September 8, 2009, is attached to the complaint or mentioned in the Administrative Review Board summary of disciplinary action during the relevant time period.) Plaintiff alleges that the officers responsible for the cell search were friends of Winters and even acknowledged that they were retaliating against Plaintiff for his grievance. (*Id.* at 4, 5.)

Correctional staff continued to write what Plaintiff claims are false disciplinary notices. On September 9, 2009, Defendant Gore wrote such a notice, charging Plaintiff with damaging or misusing state property by using a torn bed sheet to "pop" [presumably meaning to set off] the sprinkler in his cell. (*Id.* at 19.) On an unspecified date, Defendant Michel told Plaintiff that he "did not care" about the courts and that he planned to punish Plaintiff for having lied about one of his (i.e., Michel's) officers. When Plaintiff simply asked to speak to a mental health professional, he

3

was disciplined for assaulting an officer, and for having unauthorized property in his cell.[3] Officers also intentionally pushed Plaintiff's food on the floor and threatened him. (*Id.* at 5.) On November 13, 2009, two non-Defendant officers (Hart and Zimmerli) issued Plaintiff separate disciplinary tickets, and on November 14, 2009, another non-Defendant officer wrote Plaintiff yet another disciplinary report. (*See id.* at 9, 10.)

## DISCUSSION

Plaintiff's allegations present a confusing account of his disputes with prison officers. Accepting those allegations as true, however, the court is satisfied that his complaint states viable claims of retaliation and sexual abuse.

**I.     Retaliatory Discipline**

   **A.     Plaintiff's allegations are sufficient to state a claim of retaliation.**

It is well established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citations omitted); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1008-09 (7th Cir. 2002). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

To establish that he was the victim of retaliation, a prisoner must show "that a protected activity was 'at least a motivating factor' in retaliatory action taken against him, *i.e.*, action that would likely deter protected activity in the future." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). A plaintiff claiming retaliation must allege that: (1) his or her conduct was constitutionally protected, and (2) his or her conduct

---

[3]     Exhibits to the complaint suggest that suggest that Michel's disciplinary report was written prior to the claimed sexual misconduct on the part of Winters, rather than after Plaintiff complained about the alleged mistreatment.

4

was a "substantial factor" or "motivating factor" in the defendants' challenged actions. *Bridges*, 557 F.3d at 546; *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Plaintiff's grievances are protected by the First Amendment. *See, e.g.*, *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). A prisoner is entitled to take advantage of grievance procedures without fear of recrimination, and if a prison official retaliates, he violates the inmate's First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Plaintiff has met his pleading burden under these standards: He alleges that he was harassed, subjected to repeated cell searches, and falsely disciplined after he informed Winters that he intended to file a grievance.

In reaching this conclusion, the court acknowledges that Plaintiff's own exhibits are not entirely consistent with the sequence of events he has alleged. Many of the disciplinary reports attached as exhibits to Plaintiff's complaint (presumably the notices he challenges in this lawsuit) allude to disciplinary action initiated before Plaintiff threatened to file a grievance against Winters. A plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) (citations omitted). In this case, it is not clear why Winters would have issued a second disciplinary report in "retaliation" for Plaintiff's grievance when he was attempting at the same time to cajole Plaintiff not to file a grievance at all. The court notes, further, that correspondence from the Administrative Review Board, also attached to the complaint, suggests that Plaintiff never actually filed any grievance against Winters.

In light of these circumstances, Defendants may well be able to rebut any inference from the series of disciplinary notices. If Plaintiff has no more than speculation based on what he deems suspicious timing, this alone may not be enough to establish retaliation. *See Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999). Should Defendants seek summary judgment on this claim, Plaintiff will be required to present evidence from which a reasonable jury could conclude

that the cell searches, disciplinary action, and other perceived harassment were in fact motivated by retaliatory animus. *Babcock*, 102 F.3d at 275. Nevertheless, "[a]t this stage of the proceedings, 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiff's allegations are sufficient under this test, and Defendants' motion for failure to state a claim is denied.

      **B.**     ***Heck v. Humphrey* does not require dismissal on motion.**

As an alternative to the argument that Plaintiff's complaint fails to state a claim, Defendants urge the court to dismiss this case under the doctrines set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). The court declines to do so. Under *Heck*, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards*, 520 U.S. at 644-45. Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490.

*Heck* and *Edwards* come into play whenever a disciplinary conviction results in the deprivation of an inmate's good-time credits. *Edwards*, 520 U.S. at 646-47; *see also DeWalt*, 224 F.3d at 615; *Lusz v. Scott*, 126 F.3d 1018, 1021-22 (7th Cir. 1997). As the Seventh Circuit noted in *DeWalt*, 224 F.3d at 617, however, *Heck* and *Edwards* do not apply where the challenged discipline did not affect the fact or duration of the prisoner's sentence. Defendants in this case do cite one disciplinary ticket for which Plaintiff's "good time" credits were revoked; but Plaintiff is challenging some ten disciplinary reports, and at least some of the discipline discussed in the Administrative Review Board's summary did not involve the revocation of good conduct credits.

In one instance, for example, Plaintiff was placed in segregation for two months and demoted to "C-grade" status, but those penalties did not affect the fact or duration of Plaintiff's sentence. Nor would *Heck* and *Edwards* bar claims concerning expunged disciplinary reports or reversed convictions.

Moreover, Defendants have not demonstrated that a finding in Plaintiff's favor would necessarily imply the invalidity of the disciplinary convictions. As in *Johnson v. Litscher*, 260 F.3d 826, 830-31 (7th Cir. 2001),

> [Plaintiff]'s claims challenge much more than the fact that the conduct reports were undeserved; he is also arguing that they are excessive in number. It is the act of discipline that constitutes the retaliatory conduct—a separate issue from whether [Plaintiff] was, in fact, guilty of the conduct alleged in the reports. [Plaintiff] seeks monetary damages and an injunction preventing his transfer to a maximum security prison, not a reduction in his sentence.

Under the circumstances of this case, Plaintiff may challenge his discipline as retaliatory in nature without necessarily calling into question the underlying disciplinary convictions themselves. If Defendants singled Plaintiff out for punishment for petty offenses in retaliation for his complaints, they may be liable.

## II. Sexual Harassment

Defendants' motion challenges Plaintiff's sexual harassment claim, as well. Assessing this claim is challenging; the court is uncertain whether Plaintiff is complaining of persistent sexual harassment by Winters, an isolated improper touching, or a single occasion in which simple banter between officer and inmate involved some vaguely sexual undertones. As Defendants note, verbal "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Illinois Dept. of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009); *see also DeWalt, supra,* 224 F.3d at 612 ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws.")

Nor is any unwelcome physical contact necessarily unlawful. The Supreme Court has observed that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action. . . . The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Willis v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)); *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). If Plaintiff is describing an angry grab by Winters, the officer's action, while inexcusable and unprofessional, would not be actionable under 42 U.S.C. § 1983.

Nevertheless, the court concludes that the complaint, construed liberally, adequately states a claim under this theory, as well. Plaintiff alleges that Winters engaged in sexual harassment that culminated in Winters' grabbing Plaintiff's bottom. In *Walker v. Taylorville Correctional Center*, 129 F.3d 410 (7th Cir. 1997), an inmate alleged that his counselor sexually harassed him on three occasions, the first time rubbing his arm and calling him "honey," the second time reaching under his blanket and stroking his penis three or four times, and the third time making a comment about the size of the plaintiff's penis as he was walking to the shower area. The district court found those allegations insufficient and dismissed the case on initial review, but the Seventh Circuit reversed. *Id.* at 414 (citing *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994)) (deputy sheriff could bring Section 1983 action against supervisors who allegedly sexually harassed her by calling her "honey" and "dear," making sexual remarks to her, and engaging in unwanted touching); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (municipal employee was entitled to judgment on Title VII and § 1983 claims where her supervisor had propositioned the plaintiff, made obscene gestures toward her, pinched her on the buttocks, and then became hostile when she spurned his advances); *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir. 1986) (allegations of unwanted physical contact, lewd and obscene remarks, and being required to leave

the door open when she used the bathroom stated a sexual harassment claim). *See also Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) (inmate objected to being monitored by female correctional employees who could see him naked in his cell, the shower, and while using the toilet: "a prisoner has a remedy for deliberate harassment, on account of sex, by guards of either sex"). *But see Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (inmate had no tenable Eighth Amendment claim where civilian prison employees allegedly approached the plaintiff and held him by the shoulders while one briefly grabbed his buttocks with one hand). If Plaintiff is describing sexual harassment that involved repeated physical touching, as opposed to an isolated angry poke, then he may have recourse under 42 U.S.C. § 1983.

### III.     Entitlement to Damages

Because Plaintiff's complaint does not allege physical injury, it does not support an award of compensatory damages. Federal law provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). Thus, in order to obtain compensatory damages, a prisoner claiming a constitutional violation at the hands of a prison guard must establish that he suffered physical injury. *See Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003)

This conclusion does not require dismissal of the lawsuit on motion, however. Although § 1997e(e) would bar recovery of compensatory damages for mental and emotional injuries, the statute does not preclude recovery of nominal or punitive damages for the First and Eighth Amendment violations. Physical injury is not "a filing prerequisite for the federal action itself." *Smith*, 631 F.3d at 421 (citations omitted). Prison officials who violate constitutional rights "are subject to those remedies that are not barred by section 1997e(e)--injunctive relief, of course

(unless as in this case an injunctive claim is moot)[4] but also nominal and even (most courts have ruled) punitive damages." *Id.*

Nominal damages "'are not compensation for loss or injury, but rather recognition of a violation of rights.'" *Calhoun*, 319 F.3d at 941 (quoting *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983)); *see also Carey v. Piphus*, 435 U.S. 247, 266 (1978) (nominal damages are available for the denial of a constitutional right even absent actual injury). "Punitive damages are awarded to punish and deter reprehensible conduct," *Calhoun*, 319 F.3d at 942 (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986); *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996)), and may be recoverable under § 1983 if Plaintiff makes a showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Kyle v. Patterson*, 196 F.3d 695, 697-98 (7th Cir. 1999).

The court concludes that Plaintiff may pursue his claims of sexual harassment and retaliation and seek recovery of nominal and punitive damages.

## IV.    Exhaustion of Administrative Remedies

Finally, the court notes a concern about exhaustion. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement, providing that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 532 U.S. 731 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim [under Section 1983]." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th

---

[4]    Plaintiff is currently incarcerated at the Pontiac Correctional Center. He therefore cannot obtain injunctive relief against officers at the Stateville Correctional Center. *See, e.g., Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

10

Cir. 2001). In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001) (citation omitted). An inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court).

In discussing the substantive merit of Plaintiff's claims, Defendants' brief in support of the motion to dismiss notes that there is no evidence that Plaintiff filed a grievance concerning Defendant Winters' alleged sexual misconduct. If Plaintiff filed no grievance concerning Winters' conduct, his sexual harassment claim may be subject to dismissal. Because non-exhaustion is an affirmative defense that may be waived or forfeited, *see Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999), however, and Defendants have not formally raised this defense, the court declines to make any determination on the issue at this time.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the complaint for failure to state a claim is denied. The complaint sets forth arguable grounds for causes of action for retaliation and sexual abuse, Plaintiff's claims are not definitively *Heck*-barred, and the non-availability of compensatory damages does not necessarily render the suit as a whole non-actionable. Defendants' motion to dismiss the complaint for failure to state a claim [#8] is denied. The court hereby appoints David M. Alt / Bates & Carey / 333 West Wacker Drive, Suite 900 / Chicago, Illinois 60606 / (312) 762-3100 to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.). After investigation, appointed counsel should file an amended complaint within sixty days if such amendment comports with counsel's obligations under Rule 11 of the FEDERAL RULES OF CIVIL PROCEDURE. If counsel is unable to file an amended complaint, he should so inform the court.

ENTER:

Dated: June 21, 2011

_____
REBECCA R. PALLMEYER
United States District Judge